Robert W. **BROWN**, Laura Brown, Leo F. **Boyd** and Madeline **Rhodes**, Appellees,

v.

K.L. **MAYFIELD** and Barbara L. **Mayfield**, Appellants.

No. 69688.

Court of Appeals of Oklahoma, Division I.

June 6, 1989.

Rehearing Denied July 11, 1989.

Certiorari Denied Feb. 6, 1990.

James R. Meredith, and, James H. Beauchamp, Tulsa, for appellants.

Georgina Landman, Tulsa, for appellees.

HANSEN, Judge:

This appeal from the trial court of Pawnee County sitting in equity seeks review of a judgment (1) granting an easement by prescription to Appellees (the Brown group); and (2) enjoining Appellants (Mayfields) from denying the Brown group access to a certain road which is the subject of this dispute. Mayfields also appeal the trial court's summary dismissal of their counterclaim and cross petition.

The Brown group filed suit in Pawnee County asserting a private easement over Mayfields' lot. The trial court found in favor of The Brown group and Mayfields filed a timely appeal to this Court. This case then came to be an example of the application of "Murphy's Law" to appellate cases, i.e. if something can be done wrong procedurally on appeal, it has been done here. Because the procedural history is, in part, determinative of our decision in this matter, it is incumbent that we recite the lengthy series of procedural faux pas before determining the merits of the case.

## I

### PROCEDURE ON APPEAL

On October 7, 1987, Mayfields filed their Petition in Error purportedly from a final order of the trial court issued on September 23, 1987. This order was not included with the Petition in Error, but a copy of a court minute was attached. Less than six months later, a Notice of Completion of Record was filed, pursuant to Court Rules, and Mayfields filed their Brief-in-Chief on May 16, 1988 in a timely manner.

On June 22, 1988, the Brown group attempted to file its Answer Brief, but the Supreme Court Clerk refused to accept the brief as it was not in compliance with Rule 19, Rules of the Supreme Court, 12 O.S. Ch. 15, App. 1. Subsequently on June 24, 1988 the Supreme Court ordered the Brown group to file its Answer Brief in full compliance with Rule 19, by June 29, 1988. The Answer Brief was filed two days after the deadline set by the Supreme Court. It should be noted here that (1) the Brown group was responsible for compliance with the Court Rules pertaining to briefs and (2) they had notice on June 22, 1988 that their brief was not in compliance when the Clerk rejected same.

On July 13, 1988, Mayfields filed a Motion to Strike the Answer Brief as being out of time. The Supreme Court replied on July 15, 1988 by deferring the motion until such time as the case on appeal was heard on the merits. Mayfields later filed their Reply Brief in a timely manner and the

Supreme Court assigned this case to the Court of Appeals on October 4, 1988.

The Journal Entry of Judgment was still not of record, so the Court of Appeals issued its first order on February 10, 1989, directing Mayfields to secure a nunc pro tunc journal entry and order overruling motion for new trial. They were further directed to file a suggestion within 20 days informing this Court of the status of the nunc pro tunc proceedings, with a warning that failure to comply with this order could afford a basis for sua sponte dismissal.

Mayfields' counsel responded on February 27, 1989, with a long narrative of their efforts to submit and secure a signature for the elusive journal entry, but did not provide the document. They instead asserted dilatory action on the part of the Brown group's attorney and the trial judge.

On March 9, 1989, this Court then issued its second order, directing the Brown group to (1) show cause why this appeal should not be decided on appellants' brief only pursuant to the Supreme Court's order of July 15, 1988 and (2) to respond to Mayfields' allegations of dilatory action.

The Brown group filed a response to the show cause order on March 22, 1989. Instead of addressing the issue of dilatory action on their part, they attempted to (1) re-try the case below (2) make self-serving statements (3) plead lack of notice and (4) assert "substantial compliance" with the Court's order. Mayfields filed an objection to this response on April 3, 1989, which was tantamount to a request to re-try the case on the merits and other items beyond the authority of this Court.

After much finger pointing by the parties, this Court issued its THIRD AND FINAL ORDER, directing the trial judge to conduct a hearing and settle the journal entry. On April 12, 1989, two documents were filed in this Court entitled NUNC PRO TUNC JOURNAL ENTRY OF JUDGMENT and NUNC PRO TUNC ORDER OVERRULING MOTION FOR NEW TRIAL. These orders simply adopted the trial court minutes as the final order and judgment. These two cursory minutes must now stand on their own as final orders

from which this appeal is perfected. 12 O.S. § 953.

Before addressing the merits, we must first dispose of the procedural issues.

## II

### THE FINAL ORDER

This Court is required to review *only* those journal entries which are in compliance with 12 O.S. § 32.2:

"It is the duty of the court to write out, sign and record its orders, judgments and decrees within a reasonable time after their rendition. To aid in the performance of this duty, the court may direct counsel, the district attorney or the court clerk to prepare the written memorialization for its signature and, after it is signed, to file it in the case record.

A recorded written order, judgment or decree signed by the court is a jurisdictional prerequisite to appellate review."

The parties made little effort to comply with this Court's orders. This Court has the authority to order nunc pro tunc amendments and should the parties refuse to amend the record, the pleadings shall be transmitted to this Court, as they stand. Rule 1.24(b), Rules on Perfecting a Civil Appeal, 12 O.S. Ch. 15, App. 2.

Both parties must share in these inexcusable, dilatory actions on appeal, but we hold the appellees to be more culpable. The final judgment was rendered below in July 1987 and the journal entry was not prepared for almost eighteen months. The issue of responsibility for the preparation of the journal entry was discussed by Justice Opala in *Johnson v. Johnson*, 674 P.2d 539 (Okla.1983).

"... A time-honored rule of practice casts on the victorious party the responsibility of preparing a journal entry. The appealing party—nearly always on the other side of the case—has no firm control over the process. This was doubtless true here. The lag in settling the journal entry in this case was occasioned by the appellee. His inactivity will not

be allowed to bring about a dismissal of this appeal."

In the case at bar, we hold the Brown group responsible for the delay in procuring the journal entry. Due to the unusual procedural delays, we will now review the final order as filed. To dismiss this appeal or to hold otherwise would be a travesty of justice for Mayfields.

## III

### THE ISSUE OF APPELLEE'S ANSWER BRIEF

■ This Court has before it a Motion filed July 13, 1988 by Mayfields to expunge the Brown group's answer brief. We sustain that motion and hereby *ORDER* the purported answer brief file stamped July 1, 1988 STRICKEN. The brief was properly refused by the Supreme Court Clerk's office on June 22, 1988 as not in compliance with Rule 19. The Supreme Court granted the Brown group an extension to June 29, 1988. The attempted filing on July 1st contains no "leave to file" and is without effect and void. Further, the excuse of lack of timely notice does not hold against the weight of evidence in the record. It is presumed the Brown group's attorney was familiar with Rule 19, *prior* to the filing of its brief.

This Court requires compliance with Title 12 and the Rules of Appellate Procedure. The parties will not be allowed to further their own interests while testing the patience of this Court. Further, it is not the function of the Clerk's office to remind attorneys to file their briefs in a timely manner.

## IV

### STATEMENT OF FACTS—MERITS

The Appellees Brown owned Lot Nine (9), Block One (1), Highland Addition, in Pawnee County, from 1972 until 1973. Mayfields purchased the property on March 24, 1984, after two intermediate sales. On or about the 15th day of August, 1983, Mayfields made some improvements upon their lot with gravel, rock and soil.

This stopped the Brown group from trespassing on the Mayfield property.

The lot over which the Brown group was granted a purported easement by the trial court is a corner lot facing West and abutting Lake Drive which is a dedicated, public street 50 feet in width. The North side of the lot abuts an unnamed, dedicated public street 25 feet in width. These two streets intersect to make the Northwest corner of Mayfields' lot. The two streets originate at the county line highway, and in a semicircular way provide ingress and egress to the entire addition. One entrance is at the North end of the addition and the other entrance is at the South. The properties of all the litigants face and abut Lake Drive and none of the Brown group's property touches or abuts the claimed right-of-way.

At no place in the testimony, pleadings or evidence is the claimed easement described with certainty or as definitely being an easement over and across the Mayfields' land. There is instead a vague reference to portions of the Northwest corner of their lot.

Only five Appellees seek a personal easement. The public is not a party plaintiff. Lake Drive, as dedicated, is available for use by the public and all of the property owners in the addition, including the Brown group. It has not been obstructed or interfered with in any way by Mayfields. There are no documents, deed, contracts or other writings pleaded or adduced into evidence that give the Brown group a claim of a dominant estate over the Mayfields' land, or that give rise to their nebulous claim of color of title.

We further note that this claim of easement is not one of necessity.

## V

### BRIEF HISTORY OF TRIAL COURT PLEADINGS

The Brown group filed its Petition on March 21, 1985, praying for an adjudication that the parties had a prescriptive easement over Mayfields' lot and for an injunction restraining Mayfields from obstructing

the right-of-way.[1] The Brown group later filed an Amended Petition on January 21, 1986, asking for substantially the same relief.

Mayfields answered that no right-of-way existed over their property and that the platted east/west road North of their lot had become partially impassable over the years and the Brown group had taken it upon themselves to use a portion of the lot in question for a short-cut to the road, and that this action on the part of the Brown group was a permissive use only, subject to termination, and that Mayfields had constructed barriers to prevent further trespass.

A trial was finally held on June 22, 1987. The Brown group testified and introduced exhibits in the usual manner. Mayfields were also heard. The trial court asked for additional briefs and subsequently made its ruling. It granted an easement and enjoined the Mayfields from denying access to the road.

## VI

### THE FIFTEEN YEAR RULE

■ 60 O.S. § 333 and 12 O.S. § 93 clearly recite the title by prescription time period. To establish title by prescription there must be adverse possession for a period of 15 years. *Wilp v. Magnus*, 204 Okla. 448, 230 P.2d 733 (1951).

As stated by the Supreme Court in *Hurst v. Stowers*, 399 P.2d 477 (Okla.1965), at page 480:

> To establish an easement for roadway by prescription, the land in question must have been used by the public with the actual or implied knowledge of the landowners, adversely under claim or color of right, and not merely by the owners' permission, and continuously and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute.

■ Every presumption is in favor of possession in subordination to the rightful owner, and title by adverse possession cannot be made out by inference, but must be established by clear and positive proof of actual open, notorious, exclusive and hostile possession for full statutory period. *Russell v. Davidson*, 200 Okla. 408, 194 P.2d 887 (1948).

■ In a case of equitable cognizance it is the province and duty of this Court to review and weigh the evidence. *Irion v. Nelson*, 207 Okla. 243, 249 P.2d 107 (1952). Our review of the record indicates the trial court erred in determining the Brown group met the 15 year requirement for title by prescription. Only one of the Brown group, Leo F. Boyd, appears to have come close by claiming for 12½ years. The only deed tendered for review on appeal is a deed from Appellees Robert W. Brown and Laura L. Brown, grantors, to Daniel and Joyce Norman, dated April 11, 1973. There is no reservation or exception pertaining to any easement or right-of-way. The alleged continued use of the Northwest corner of Lot 9 by the non-owners can, at best, be described as permissive in nature, subject to termination by the owner. A use of a road over privately owned land with the permission of the owner is not adverse, and cannot give rise to an easement by prescription, no matter how long continued. *Irion v. Nelson, supra*. Where one landowner had been using a road across an adjacent landowner's open and unenclosed land for more than 15 years, but there was no evidence that claim of right to such user had been made to owner of such land, use would be deemed permissive and judgment declaring roadway public highway was improper. *Walthers v. Tanner*, 204 Okl. 598, 233 P.2d 303 (1951).

## VII

### CLARITY OF LEGAL DESCRIPTION

■ Finally, we address on the merits the issue of clarity of the legal description

---

**1.** The Brown group's second and third cause of action pertain to flood damages and physical damages to a motor home, which have been adjudicated by the trial court and are not at issue on appeal.

in an easement. This apparently has not been thoroughly addressed before by an Oklahoma appellate court, and therefore, appears to be a question of first impression.

The trial court's minute order granting the easement on which the Brown group relies is as follows, verbatim:

C–85–47 Brown, et al v. Mayfield. This case was tried to the court on the 22nd day of, 1987. The pltf. appearing personally with counsel Georgianna Landman, the defts. appearing through counsel James Meredith and Jim Beaucamp. The court heard numerous witnesses, asks for a brief as to the issue of tacking. The court after reviewing all evidence in the case and referring to the Briefs, finds that the pltfs. should succeed on their bid for a title by prescription. The court feels that in essence that the title by prescription was held even prior to the time of the deft. taking the land. Court will further and thus finding that the defts. is stopped and was stopped from closing this road or making any action since the title by prescription had already ripened prior to his purchase of the land. The court will further find that the deft. should be denied on his cross-petition, that an injunction should issue against the deft. to re-open the road in question. Copy of this minute to be sent to both Georgianna Landman and James Meredith.

This instrument makes *no reference to any legal description* whatsoever. It is void of any lot number, section, township, range, county or state. The purported easement does not meet the basic criteria for recording in the county clerk's office or for inclusion in any abstract of title.

Mayfields point out that the legal authority dealing with this issue is found not only in other jurisdictions but in cases of ancient origin.

In *Fox v. Pierce*, 50 Mich. 500, 15 N.W. 880 (1883), the court refused to protect a right-of-way over private property because the right-of-way was indefinitely described:

A right of way that is too indefinite for a determinate description cannot be estab-

lished and protected by a court of chancery.

And further:

a bill to establish a right of way ... cannot be sustained where it does not furnish the means for declaring exactly ... the shape, dimensions, and precise locality which it occupies.

Similarly, in *Bayless v. Price*, 131 Ind. 437, 31 N.E. 88 (1892), the court held:

The complaint in an action to establish a right of way and to enjoin its obstruction must contain a description of the land over which it is claimed and its omission is not cured by reference to ... "exhibits".

The California Supreme Court stated in *Leverone v. Weakley*, 155 Cal. 395, 101 P. 304 (1909):

It goes without saying that, where it is sought to have it decreed that real property of a person is subject to use or easement in favor of another, the property affected must be described in the pleadings with such certainty as to enable the party against whom the claim is made to definitely know exactly what portion of his property is so claimed, the judgment establishing the validity of the claim must be definite and certain as to the property affected.... There is nothing in this to enable one to definitely locate on the ground the particular strip claimed to constitute the alleged road or highway.

And finally, in *Post v. Wallace*, 119 W.Va. 132, 192 S.E. 112 (1937), the Supreme Court of West Virginia stated in its review of a lower court decree:

An easement of private right of way over land must have a particular definite line.... The location of this road has not been made with such certainty as to justify the approval of the decree below on that point.

We are pursuaded by the rationale of these decisions. We therefore hold, that in the instant case the purported order granting an easement to the Brown group is so vague as to be void for the reason that it

**714**

contains no legal description of the easement or the land so burdened.

## VIII

## APPELLANTS' COUNTERCLAIM AND CROSS PETITION

The Final Order dismisses Mayfields' Counterclaim and Cross Petition without a hearing on the merits. Because we are reversing the trial court and quieting title in Mayfields the Counterclaim and Cross Petition must therefore be reinstated.

## IX

## CONCLUSION

On appeal of a case in equity this Court will render that decree which the chancellor should have rendered on the record presented. *Johnson v. Johnson*, 674 P.2d 539 (Okla.1983).

We therefore REVERSE the order of the trial court; and

1. VACATE the purported easement granted by the trial court on July 22, 1987;
2. VACATE the injunction granted against Mayfields.

We further direct the trial court to enter judgment quieting title to Lot Nine (9), Block One (1), Highland Addition in Pawnee County, Oklahoma, in Appellants K.L. Mayfield and Barbara L. Mayfield; and to reinstate the Counterclaim and Cross Petition of Appellants Mayfield in Cause No. C–85–47, Pawnee County, Oklahoma.

REVERSED AND REMANDED WITH DIRECTIONS.

HUNTER, P.J., and MacGUIGAN, J. concur.